## J. W. STRAWICK v. WILLIAM MUNHALL.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 31, 1890—Decided January 5, 1891.
[To be reported.]

1. The notice of an intention to file a lien, required by the last proviso of § 1, act of June 17, 1887, P. L. 409, " relating to the liens of mechanics, laborers and others, upon leasehold estates.and property thereon," is the basis of the right, and must be given to the owner or reputed owner of the leasehold at the time the work is begun.

2. The word " when,". in the first clause of said proviso, is the equivalent of the words " at the time," in the last proviso to § 1, act of May 18, 1887, P. L. 118; and, the notice being indispensable for the lien and for the protection of the owner of the leasehold, a notice of an intention to file the lien, given after the work is done, will be too late.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 147 October Term 1890, Sup. Ct.; court below, No. 585 December Term 1889, C. P. No. 1.

On December 2, 1889, a scire facias sur " mechanics' lien," to No. 46 December Term 1889, M. L. D., was served at the suit of J. W. Strawick against William Munhall, lessee and owner, and S. E. Leech, contractor, the plaintiff filing a statement of claim for a balance. of $389, with interest from October 24, 1889, for ninety-two days labor as a driller on an oil well, from July 8 to October 24, 1889, inclusive, at $4.50 per day, under a contract of hiring by S. E. Leech, the dates on which the work was done being specified, and credits for payments made stated.

On December 17, 1889, the defendant, Munhall, filed an affidavit of defence in which he averred, in substance, that prior to the performing of any of the labor claimed for by the plaintiff, he had made a contract with John Gallagher to drill a well on the leasehold for ninety-five cents per foot, payable when the well was completed; that said Gallagher never completed said well, but abandoned it in an unfinished condi-

### Charge of Court below.

tion; that the plaintiff was never employed by said John Gallagher to do any work on the leasehold, and the labor for which the claim was filed was not for any labor performed by or for said John Gallagher; that the defendant "received no notice from the plaintiff of any intention on his part to file a mechanics' lien and hold deponent's interest in said lease liable for any work or labor done, until the work thereon had been abandoned and the materials and machinery of the contractor partly removed therefrom;" and that the labor claimed for was not of such kind, nor performed under such contract, as gave the plaintiff a right of lien upon defendant's leasehold, under the provisions of the act of assembly. Issue.

At the trial on May 29, 1890, there was evidence adduced, on the part of the plaintiff, tending to show that the contract for the drilling of a well had been let by the defendant to John Gallagher, originally; that, before completion, the defendant released Gallagher and accepted Leech as a contractor to drill the well in his stead, and that plaintiff was employed by Leech as a driller, and so rendered the service claimed for. The defendant denied that he had released Gallagher and accepted Leech, as alleged by the plaintiff, and testified in effect that Leech was but a sub-contractor under Gallagher.*

—At the close of the testimony, the court, STOWE, P. J., charged the jury, submitting only the question whether the plaintiff had the contract with Leech for the drilling of the well when the plaintiff's services were rendered, answering defendant's point for instruction as follows:

Counsel for defendant asks the court to instruct the jury that upon all the testimony in these cases the plaintiffs are not

---

* There was no evidence adduced by either side, so far as shown in the paper-books, as to whether any notice of an intention to file a lien was or was not given. At the close of the plaintiff's case, a motion by the defendant for a nonsuit, on the ground that " notice is not shown to have been given to the lessee of an intention to file the lien," was refused, no reason being stated. Perhaps the motion was refused because the averment of the affidavit of defence that no notice was given until, etc., was not traversed by a counter affidavit by the plaintiff, as required by the rules of court, and was therefore taken as admitted. It was stated, however, in the appellee's counter statement, that the lien filed averred " that the notice of the intention to file a lien was given according to law." There were other like cases tried with this one.

entitled to recover: first, because notice by the plaintiffs of their intention to file liens, as required by the act of assembly under which the liens are filed, has not been proved; second, because, the testimony of the plaintiffs having shown that the contract with the defendant was to pay for the well when completed; and, the well never having been completed, neither the contractor, nor these plaintiffs working under him, are entitled to recover in these actions.

Answer: Refused.[1]

—The jury returned a verdict for the plaintiff for $402.59. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The refusal of defendant's point.[1]

*Mr. W. F. McCook*, for the appellant.

1. The plaintiff, in this case, was in such privity of contract with the owner of the leasehold, that he was bound to know, as he did know, that the owner was not required to pay for the well, or for work on the well, until it was completed. The doctrine of Schroeder v. Galland, 134 Pa. 277, and Benedict v. Hood, 134 Pa. 289, citing Harlan v. Rand, 27 Pa. 511, and Brown v. Cowan, 110 Pa. 588, is therefore applicable. If Schroeder v. Galland apply to sub-contractors only, because a sub-contractor is pro tanto an assignee of the original contract, and therefore bound by its terms, that is an end of this position. If, however, those who furnish labor and materials have a right of lien only by virtue of their privity with the original contractor, they should have no right of lien when he has none.

2. The proceeding by claim for lien is wholly in rem. The res in this case is the well, as in ordinary cases it is a building.* And, had the contractor drilled and completed a new well, as he should have done, assuredly the labor- and material-men could not have claimed liens for labor and materials furnished to the well abandoned. If a building is destroyed by fire, even after a mechanics' lien is filed, no judgment can be entered in a scire facias when this defence is interposed: Morrow, P. J., in Gross v. Camp, 4 Pa. C. C. R. 461.

---

\* Or, the building and curtilage? And what would be the curtilage of an oil well?

Opinion of the Court.

3. Again: the plaintiff was required by the proviso to § 1, act of June 17, 1887, P. L. 409, to give notice to the defendant of his intention to hold the leasehold for his labor, at the time he was employed. The court below held the word " when," in the proviso, to be equivalent to " in the event that," or " if." Read alone, the single phrase would be so interpreted; but reading the entire proviso, the notice is evidently not of a present intention to file a lien immediately, but a notice informing the owner of the existence of the claim before he settles or can be compelled to settle with the contractor. Otherwise, the intention and notice may precede the filing of the claim but an instant, and the important limitation becomes nugatory.

*Mr. James Bredin*, for the appellee.

It seems unnecessary to call attention to the distinction between a sub-contractor, who necessarily becomes a party to the original contract by agreeing to fulfil a certain part thereof, and a mere laborer, hired by the contractor, working by the day on an oil well, and filing a lien under the act of June 17, 1887, P. L. 409. And, to hold that a man working by the day on an oil well must give notice, on each and every day that he works on the well, of his intention to file a lien for such day's work, which notice, in most cases, would have to be given to a number of persons, residing in different places, at a considerable distance from the well, would be to say that the proviso was intended to nullify the act, and, if not intended to deceive the laboring man by a promise of protection in one clause, taken away by an absurd requirement in the next, that the act fails entirely in its object and design.

OPINION, MR. JUSTICE McCOLLUM:

The appellant leased the Sauerman farm, or a portion of it, for oil and gas purposes. Gallagher agreed with him to drill a well upon it, to be paid for when completed. Leech was then substituted for Gallagher in the agreement. The well was abandoned by the contractor, who took away the machinery used in drilling it. It is not finished, and it is probable that it cannot be, because the drilling tools are fast in it, and the contractor and his workmen were not able to remove them. It is an incomplete and abandoned well.

Opinion of the Court.

Strawick, the appellee, was employed by Leech to work up-on it, and claims a lien for his labor under the provisions of the act of June 17, 1887, P. L. 409, relating to liens on personal property and leaseholds.   He filed his claim for a lien on Oc-tober 24, 1889, " for ninety-two days of labor as a driller, . . . . from July 8 to October 24, 1889, inclusive."   It is alleged by the appellant that the appellee acquired no lien by virtue of his claim so filed, because he did not give notice of an intention to file a lien for it, until the work was done and the well was abandoned.

There is no dispute as to the time the notice was given, but there is disagreement as to the requirement of the statute in regard to it.   The appellant contends that the notice must precede the work, and the appellee insists that, if given at any time before filing the claim, it is sufficient.   The statute is somewhat obscure on this point, and is, perhaps, susceptible of an interpretation in harmony with either claim.   It is carelessly and inartificially drawn.   It puts the material-men and the workmen on the same plane as to notice, but it gives no lien for materials.   It is clear, however, that the notice is indis-pensable to a lien, and that it is intended for the protection of the owner of the leasehold.   It should be given, therefore, so that it will accomplish its purpose.   A notice to the owner, after the completion of the work and the payment of the con-tract price for it, would be of no benefit to him.   He has the right to know, as the work progresses, for what labor his pro-perty is to be held liable.   If the workmen give notice of their intention to file liens for it, he is in a position to protect them and himself in his settlement with the contractor.   It is ap-parent that the notice clause was inserted in the statute with this object in view, and a construction which defeats it should be avoided, unless required by the plain and unambiguous language of the act.

There is no hardship in exacting from the workmen notice of their intention to file liens for their labor when they enter upon the work in the service of the contractor.   The statute has given them a lien on the property of the owner, on terms which are reasonable and just, and compliance with these is essential to its creation and continuance.   The statute does not create a lien which is destroyed by a failure to give the

notice within thirty days after the work is performed, but it makes the notice the foundation of the lien. We think the provision as to notice, in the act under consideration, is substantially the same as in the act of May 18, 1887, P. L. 118, relating to liens for repairs. The word " when," in the former, is the equivalent of the words " at the time," in the latter. We are of opinion that, after the work is done, a notice of an intention to file a lien comes too late. As this view is fatal to the appellee's claim, the other questions raised by the specifications of error require no discussion.

The judgment is reversed.

